NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2987
_____

UNITED STATES OF AMERICA

v.

KAREEM RUSSELL
a/k/a Reem,

Kareem Russell,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-10-cr-00186-001)

District Judge:  Honorable Gene E. K. Pratter
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2015

Before:  SMITH, JORDAN, SLOVITER, *Circuit Judges*.

(Opinion filed: March 20, 2015)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SLOVITER, *Circuit Judge*.

Kareem Russell directly appeals his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Russell was arrested after police searched his home and found a loaded gun in Russell's bedroom while Russell, a convicted felon, was in the room with his girlfriend. Russell raises two issues. First, Russell contends that the record on appeal is incomplete because the trial transcript omits the testimony of three Government witnesses. Therefore, he argues that the record is not sufficient to permit appellate review. Second, before Russell's trial, the Philadelphia Police Department destroyed the firearm that led to Russell's conviction, and Russell argues that all evidence pertaining to the firearm should have been suppressed. For the reasons discussed below, we will affirm.

## I. Sufficiency of the Record on Appeal[1]

Under the Federal Rules of Appellate Procedure, within 14 days after filing a notice of appeal, the appellant must either order "a transcript of such parts of the proceedings not already on file as the appellant considers necessary," or "file a certificate stating that no transcript will be ordered." Fed. R. App. P. 10(b). Where the proceedings were not recorded or a transcript is unavailable, "the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." *Id.* 10(c). The appellee may then serve objections or proposed amendments. *Id.* "The statement and any objections or proposed amendments must then

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

be submitted to the district court for settlement and approval.  As settled and approved, the statement must be included by the district clerk in the record on appeal."  *Id.*  A mere absence of transcripts "does not constitute per se reversible error."  *United States v. Sierra*, 981 F.2d 123, 125 (3d Cir. 1992).  Rather, "to be successful with an argument that because a portion of the trial transcript is missing the case 'warrants reversal,' [a defendant] must make 'a specific showing of prejudice.'"  *United States v. Sussman*, 709 F.3d 155, 163 (3d Cir. 2013) (quoting *Sierra, supra*).

After protracted attempts to obtain trial transcripts (frustrated through no fault of his own, and during which time this court granted several extensions of time), Russell succeeded in obtaining only a rough transcription replete with mistakes and omissions, and could not obtain audio recordings of the trial.  On April 21, 2014, Russell filed a statement of the evidence under Rule 10(c), which included the incomplete, rough transcript and set forth the record's deficiencies.  However, since then, the Government recovered audio recordings of Russell's trial by investigating the court reporter and running a forensic examination on her laptop.  The court reporting company used those recordings to create a more complete and accurate transcript, which the Government submitted with its response to Russell's statement of the evidence.  Russell concedes that the record now contains complete and accurate transcripts for two of the three days of his trial (April 9, and April 11, 2012).  The court reporting company reconstructed the third day's proceedings (April 10, 2012) in part, and Russell does not object to the portion of the April 10th proceedings for which a transcript now exists.  However, the April 10th transcript is incomplete:  the audio recordings did not include (and therefore the

3

transcripts do not include) complete testimony from three Government witnesses. It is to these omissions that Russell now objects.[2]

In its response to Russell's statement of the evidence, the Government attempted to reconstruct the missing testimony. It stated that one of those witnesses, Philadelphia Police Officer Jeffrey Hampton, had testified (and been subject to cross examination) the day before at a pretrial hearing, and that his testimony at trial was identical to his testimony at the pretrial hearing. Russell provided no recollection to the contrary; instead he merely stated that he cannot recall the substance of Hampton's testimony. The other two witnesses were firearms experts; the Government contended (and both parties' closing arguments reflect) that this testimony was uncontroversial, going to the uncontested interstate commerce element of the crime, and whether the gun fit the statutory definition of a "firearm." Again, Russell offered no specific recollection contrary to the Government's reconstruction, nor does he point to what prejudice he suffered by any of these transcripts' omission. The District Court adopted and approved of the Government's Statement of the Evidence.

Russell has done no more on appeal than he did before the District Court to demonstrate any prejudice he may have suffered based on these missing transcripts. Therefore, the omission of these portions of the trial transcripts was harmless. *See Sussman*, 709 F.3d at 163.

_____

[2] Russell filed his opening brief in this appeal before the Government filed the improved transcripts. Russell declined to file a revised brief to reflect the current state of the record despite being given an opportunity to do so.

## II.    Suppression of Evidence

Before trial, the Philadelphia Police Department destroyed the gun that led to Russell's conviction for being a felon in possession of a firearm.  The police photographed the gun both as they found it and after removing it from the closet where they found it.  Those photographs were presented at trial.  Russell also admitted in a signed statement that the gun was in his bedroom, and that he knew it was there.  Russell argues that all evidence related to the gun should have been suppressed.

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.  To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*California v. Trombetta*, 467 U.S. 479, 488-89 (1984) (internal citations omitted). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Here, Russell fails to show that police acted in bad faith in destroying the gun. The police destroyed the gun as part of a bulk weapon destruction process following their standard evidence retention and destruction procedures.  Russell also fails to show that the gun would have possessed any exculpatory value, let alone exculpatory value that would have been apparent before it was destroyed.  The existence of a gun would, on its face, be inculpatory, not exculpatory.  Nor could the evidence Russell claims he would

5

have gained from the gun—fingerprints and DNA evidence—have actually been exculpatory in this case. The Government did not offer DNA or fingerprint evidence at trial; the Government states that the police had not even tested the gun for prints. As the Government aptly notes, "In this situation, Russell never would have tested the gun himself; the result could only make things worse (if his prints were found), not better." Appellee's Br. at 29-30. For both of these reasons, the gun's destruction did not deny Russell due process, and evidence related to the gun should not have been suppressed.

## III. Conclusion

For the reasons discussed above, we will affirm the District Court's judgment.